UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER SCARBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00816-MJD-TWP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# Order

Plaintiff Heather Scarberry ("Scarberry") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, the Court **REMANDS** the case for further proceedings consistent with this opinion.[1]

## I. Background

**A. Procedural History**

On April 9, 2007, Scarberry filed an application for SSI, alleging a disability onset date of February 2, 1998. Scarberry's claim was denied initially on July 13, 2007 and again after reconsideration on March 4, 2008. On May 2, 2008, Scarberry requested a hearing, which was held before Administrative Law Judge ("ALJ") Arline Colon on March 15, 2010. On April 9,

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

2010, the ALJ denied her application. Scarberry requested review of the ALJ's decision by the Appeals Council. On April 20, 2011 the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the agency's final determination for purposes of judicial review. On June 16, 2011, Scarberry filed this timely appeal requesting review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Scarberry previously filed a claim on August 26, 2003 for SSI and Disability Insurance Benefits prior to the current application for SSI only. At that time, an ALJ denied her application, which then became the final determination of the Commissioner when the Appeals Council affirmed the ALJ's determination. Scarberry did not challenge that finding – and does not challenge it here – and so it became *res judicata* as to her disability status and the facts on which her disability status was determined for the time prior to February 23, 2007. *See, e.g.*, *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998).

**B. Factual Background**

At the time of filing her application, Scarberry was 30 years old and had a high school education. She alleges a history of seizure disorder, hypothyroid disorder, borderline intellectual functioning, history of learning disorder, and mixed personality disorder.

During grade school, Scarberry was placed into the program for learning disabled youngsters. She received resource services in mathematics and English. In grade school, Scarberry's articulation was reported as being poor, but she was able to express herself adequately. On the Wechsler Intelligence Scale for Children, she had a verbal score of 78, a performance score of 74, and a full-scale score of 74. Her IQ scores reflected a borderline range of intellectual functioning.

Beginning in March of 1999, Scarberry began seeing a neurologist, Dr. Blankenship, after a seizure she experienced during the night, which was witnessed by her father. In July of 2007, Scarberry again saw Dr. Blankenship and she reported that her whole body hurt and that she had headaches and tingling sensations in her right leg and foot. [R. 528.] Dr. Blankenship's clinical impression was epilepsy, fibromyalgia, and leg weakness.

Scarberry was examined by two physicians at the request of the Social Security Administration. In June of 2007, Dr. Khan found that her physical exam was normal and listed her problems as seizure disorder with significant antiepileptic medication side effect and hypothyroidism. [R. 394.] Also in June 2007, Dr. Davidson, a psychologist, concluded there were moments when Scarberry seemed puzzled or confused and showed naiveté in terms of possible psychological events and contributions to her medical issues. [R. 400.] Dr. Davidson's diagnosis was history of learning disorder, borderline intellectual functioning, and mixed personality disorder. [R. 401.]

In July of 2007 and March of 2008, it was determined that Scarberry could never climb ladders, ropes, or scaffolds; however she could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. It was also determined she should avoid all exposure to hazards such as machinery and heights. [R. 411, 413.] During July of 2007, Dr. Larsen, a non-examining state agency psychologist, found that Scarberry would have difficulty with complex task completion, but retained the capacity to perform simple repetitive tasks on a sustained basis without special considerations. [R. 419.] Dr. Gange reaffirmed this determination in March of 2008. [R. 538.]

In February of 2008, Scarberry was seen by Dr. Khalil Diab at the request of the Social Security Administration. Dr. Diab diagnosed Scarberry with epilepsy and hypothyroidism, which were both under good control. In Dr. Diab's opinion, she did not have any limitations from either

a physical or a psychological standpoint. Scarberry filed the application under review here in April of 2007.

## II. Disability and Standard of Review

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy considering her age, education, work experience, and limitations. 42 U.S.C. § 1382c(a)(3)(B).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. §416.920(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment, that meets the durational requirement, she is not disabled. 20 C.F.R. §416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, Subpt. P, App. 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. §416.920(a)(4)(iii).

In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her]

---

[2] The Code of Federal Regulations contain separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, the Court cites only to the SSI sections in discussing the standard for determining whether a claimant is disabled. Citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. §404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. §416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. §416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, … or that because of … missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

## III. The ALJ's Decision

At step one, the ALJ found that Scarberry had not engaged in substantial gainful employment since the alleged onset date despite her having worked a very small amount of time in 2007, 2008, and 2009, earning just over thirteen thousand dollars. [R. 17.] At step two, the ALJ found that Scarberry has the following severe impairments: "history of seizure disorder, hypothyroid disorder, borderline intellectual functioning, history of learning disorder, and mixed personality disorder." [*Id*.] The ALJ determined that these impairments more than minimally affect the claimant's ability to perform basic work functions. [R. 18.] The ALJ also noted that the medical record indicated medically determinable impairments of recent hysterectomy, recovery from cholecystectomy, and headaches. The ALJ determined these impairments to have "no effect on her ability to perform basic work-related tasks and are therefore non-severe in nature." [*Id*.]

At step three, the ALJ found that Scarberry did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [*Id*.] The ALJ found that Scarberry had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: frequently climb stairs/ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; avoid hazards; and simple repetitive tasks with occasional interactions with the general public." [R. 20.] At step four, the ALJ found that Scarberry had no past relevant work experience. [R. 23.] At step five, the ALJ found that Scarberry could perform jobs in the national economy and therefore she was not disabled. [R. 24.]

## IV. Discussion

Scarberry first argues the ALJ did not list all her limitations in concentration, persistence, or pace when posing hypothetical questions to the Vocational Expert ("VE"). Next, Scarberry

6

argues the ALJ improperly evaluated her credibility with regard to her symptoms. Lastly, Scarberry argues the ALJ improperly evaluated the credibility of the testimony of Scarberry's father, Gary Scarberry, and Scarberry's current employer, Karen Stewart. The Court will speak to each argument in turn.

## A. Posing Hypotheticals to the Vocational Expert

Scarberry argues that, while the ALJ found that she had moderate difficulty in concentration, persistence, or pace, [R. 19], the ALJ did not account for these difficulties when she posed the hypothetical questions to the VE. [R. 54; 56.] In support of her position, Scarberry cites *O'Conner-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009); and *Kasarsky v. Barnhart*, 335 F.3d 539 (7th Cir. 2003). The Commissioner argues the ALJ has wide discretion in including or excluding certain limitations from the hypothetical questions and posits that Scarberry's assertions are unfounded and unsupported.

In *O'Conner-Spinner*, the Seventh Circuit held "[o]ur cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace." *O'Conner-Spinner*, 627 F.3d at 619 (citations omitted). The court goes on to state "[o]ur cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id*.

The Seventh Circuit has steadfastly affirmed the rule that "[i]n most cases… employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, or pace." *Id*. at 620; *see also Stewart*, 561 F.3d at 684-85 (restricting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *Kasarsky*, 335 F.3d

7

at 544 (phrasing a hypothetical as involving an individual of borderline intelligence does not account for limitations of concentration, persistence, or pace); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting the hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings). The Seventh Circuit has declined, however, to extend the general rule of including the terms "concentration, persistence, or pace" to a *per se* requirement. Indeed, three exceptions are allowed.

The Seventh Circuit allows one exception when the VE has independently reviewed the medical records of the claimant or has been present for testimony directly addressing the limitations posed by the claimant's deficiencies in concentration, persistence or pace. *Craft*, 539 F.3d at 677-78. However, this exception does not apply when the ALJ poses a series of increasingly restrictive hypotheticals to the VE. In these cases, the Seventh Circuit reasons that the VE's attention is focused on the hypotheticals – not upon the claimant's record. *Id*.

The Seventh Circuit allows a second exception when the ALJ's alternative phrasing specifically excludes tasks that someone with the claimant's concentration, persistence, or pace limitations would be unable to perform. This exception applies most where the claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work. *O'Conner*, 627 F.3d at 619.

The third exception allows the ALJ to omit the terms "concentration, persistence, or pace" from the hypothetical posed to the VE when there is an obvious link between a named condition and the claimant's limitations with concentration, persistence, or pace. For instance, the *O'Conner-Spinner* court noted that in *Simila v. Astrue*, 573 F.3d 503 (7th Cir. 2010), the claimant's difficulties with concentration, persistence, or pace stemmed from chronic pain syndrome and somatoform disorder. The underlying conditions were included in the hypothetical

and the Seventh Circuit determined that the link between the underlying conditions and limitations with concentration, persistence, or pace was "apparent enough that incorporating those difficulties by reference… was consistent with the general rule, albeit just barely so." *O'Conner-Spinner*, 627 F.3d at 620.

The Commissioner does not argue that the first two exceptions apply. Rather, the Commissioner, in essence, argues that the third exception applies. Specifically, the Commissioner argues that the ALJ included in her hypothetical Scarberry's mental impairments, including borderline intellectual functioning and a learning disorder, and thus provided sufficient information to the VE to allow him to identify appropriate jobs. Scarberry's limitations with concentration, persistence, or pace, however, do not stem from an underlying condition that has an apparent link to her limitations, as did the limitations articulated in *Simila*. As discussed in *Kasarsky*, there is no clear link between Scarberry's underlying condition of borderline intelligence – and by analogy her learning disorders as well – and her limitations with concentration, persistence, or pace. 335 F.3d at 544. The Seventh Circuit made it clear in *Simila* – and again in *O'Conner-Spinner* – that the third exception is a narrow one to be used in exacting circumstances not present here. *Simila*, 573 F.3d at 521; *O'Conner-Spinner*, 627 F.3d at 620.

Including Scarberry's underlying conditions of borderline intelligence and learning disabilities does not create an obvious link to her limitations in concentration, persistence, or pace. In addition, the ALJ's statement that Scarberry can perform "simple, repetitive tasks" also does not adequately reflect her limitations due to deficits in concentration, persistence, or pace. *O'Conner-Spinner*, 627 F.3d at 620. Thus, there is no way of knowing whether the VE's responses to the hypotheticals are accurate given Scarberry's limitations as found by the ALJ. Therefore, the matter must be remanded.

**B. Scarberry's Credibility**

Scarberry next argues the ALJ improperly evaluated the credibility of her testimony given regarding her symptoms and that the ALJ's credibility finding is not supported by substantial evidence. The Commissioner argues that the ALJ gave enough of an explanation and that the highly deferential standard has not been met to overturn the ALJ's credibility determination here.

Under the Social Security Act, the Commissioner's findings must be sustained if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Dixon*, 270 F.3d at 1176. This Court will reverse the Commissioner's findings as to credibility determinations only if they are patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (quoting *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). While the ALJ is not required to address every piece of evidence or testimony presented, she must provide a logical bridge between the evidence and conclusions. *Jones*, 623 F.3d at 1160 (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)).

The ALJ found Scarberry's statements regarding the intensity, persistence, and limiting effects of her symptoms not fully credible. [R. 20-21.] Scarberry challenges the ALJ's credibility determination, alleging that the determination is patently wrong and that the ALJ "cherry picked" the evidence. Scarberry notes that the ALJ discredited her testimony for the following reasons: 1) the ALJ found it inconsistent that Scarberry reported she would need help with anything financial, but also stated she went to her bank without a problem; 2) Scarberry's daily activities were inconsistent with her alleged fatigue; 3) Scarberry's disabling current

impairment was at the same level before and after her alleged onset date suggesting her impairments would not currently prevent work as she worked part-time prior to her alleged onset date; 4) despite several symptoms and limitations, her exams were normal; 5) Scarberry had no seizures in five years; 6) Scarberry did not report the side effects of her medication to her doctors; and 7) her treatment as a whole was successful in controlling her symptoms. Scarberry challenges the ALJ's analysis on all seven points; however, in so doing, Scarberry addresses reasons 3 through 7 as a group, [Dkt. 25 at 18-19], focusing upon the side effects of Scarberry's medication. Consequently, the Court will follow that same approach in addressing Scarberry's arguments.

      As to the first reason, the ALJ found Scarberry's hearing testimony that she would need help with anything financial inconsistent with her previous statement that she went to the bank without any apparent difficulty. [R. 21.] Scarberry argues that her previous statement that she is able to drive and go places such as the bank is not inconsistent with her statement that she would need financial assistance. According to Scarberry, "[t]hat she states that she can drive to the bank is not the same as having the need for assistance with financial transactions." [Dkt. 25 at 17.] While that might be true, the Court, however, does not find it patently wrong for the ALJ to infer that Scarberry's ability to go to the bank indicates an ability to perform some finances on her own, contrary to her testimony at the hearing.

      As to the second reason given for discrediting Scarberry's statements regarding the intensity, persistence, and limiting effects of her symptoms, the ALJ found Scarberry's statement at the hearing that she performed relatively few activities of daily living inconsistent with her prior statements. The ALJ cited to the record to show the "myriad" daily activities that Scarberry reported, including making breakfast, getting her daughter up and around, picking up the house,

11

running errands, attempting to exercise, reading, and making dinner for the family. [R. 21, citing R. 399.] As such, the ALJ's second reason for discrediting Scarberry's statements was not patently wrong.

As to the remainder of the reasons set forth by the ALJ, Scarberry argues that the ALJ erred by not taking into account several pieces of evidence in the medical record where Scarberry reported likely side effects to her treating neurologist. The several instances that Scarberry points to, however, are all in the time period that the ALJ determined was barred by *res judicata*. Scarberry did not file for an appeal in the first determination and did not request it to be subsequently reopened. When the ALJ stated that Scarberry had not reported any of the side effects to her treating physician, she, of course, meant Scarberry had not reported any of the side effects to her treating physician *during the time period in question*. Scarberry makes no argument here why *res judicata* should not have applied to any of these instances in the medical record and therefore waives such argument. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (finding that undeveloped and unsupported arguments are waived).

Scarberry also argues that, even if she had not reported the side effects to a treating physician, such is not grounds to discredit the testimony of a witness because the benefits of a particular drug may outweigh the side effects. She cites *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009), for the proposition that a claimant's failure to report side effects to the doctor is not necessarily grounds to discredit the claimant's testimony. The Court disagrees with Scarberry's interpretation of *Terry*. *Terry* stands for the proposition that the ALJ cannot impute an exaggeration of claimant's symptoms to the claimant for using an over-the-counter medical device – in *Terry*, a walker – when it was not recommended by the claimant's doctors. The ALJ did not impute any exaggeration of symptoms to Scarberry. The ALJ merely found it

12

questionable that Scarberry only reported side effects from her medications to physicians who examined her for the purpose of the legitimacy of her SSI application, but not to her treating physician.

In sum, the ALJ gave a host of reasons for discrediting Scarberry's statements, none of which were patently wrong. As such, the Court affirms the ALJ's credibility determination.

### C. Gary Scarberry's and Karen Stewart's Credibility

Lastly, Scarberry argues that the testimony of her father, Gary Scarberry, and that of her employer Karen Stewart, should not be discredited because they are inconsistent with the longitudinal medical record. Scarberry cites SSR 06-03p for the proposition that the ALJ should take such things as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. Again, the Commissioner argues the ALJ met the minimum amount of explanation and that due to a very deferential standard this Court must allow the ALJ's determination to be upheld. The Court agrees.

While SSR 06-03p does list factors the ALJ is supposed to take into account when determining the credibility of testimony from non-medical sources, it also states that the same factors for determining the credibility of medical sources can be taken into account when determining the credibility of non-medical sources. Additionally, the ALJ is not required to address every piece of evidence or testimony presented; rather, the ALJ must simply provide a logical bridge between the evidence and conclusions. *Jones*, 623 F.3d at 1160 (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). While the ALJ's statements are short and succinct as to why she discredits the testimony of both Mr. Scarberry and Ms. Stewart, she does cite to specific exhibits in the record, and therefore gives enough of an explanation as to why the ALJ

discredits this testimony, and she does not disregard an entire line of evidence. Therefore, there is nothing patently wrong with these determinations, and the Court must affirm the ALJ's credibility determination as to Gary Scarberry and Karen Stewart.

## V. Conclusion

For the above stated reasons, the Court **REMANDS** the case for further proceedings consistent with this opinion.

Dated: 08/17/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List: All Electronically Registered Counsel